## JOHN HOXIE *versus* CYRUS WESTON & *al.*

The bond to be given by one committed for the non-payment of his taxes under the provisions of St. 1835, c. 195, to procure his discharge from imprisonment should be given to the assessors of the town.

The requirement of the Statute that such bond should be given to the assessors does not prevent the person thus lawfully imprisoned from making a bond or contract with his creditor which will be good at common law.

A bond by one thus imprisoned, given to the treasurer or to an inhabitant of the town, is good at common law — and if the obligee accept the bond, he is regarded as assenting to the transaction and agreeing to execute the trust apparent in the contract.

Such bond is not within the provisions of St. 1821, c. 59, § 26, and though made payable to A. B., Treasurer, or his successor, &c. the suit must be in the name of the original obligee.

St. 1835, c. 195, § 17, repeals the act establishing the limits of gaol yards.

An order drawn by the selectmen in favor of the collector for certain abatements of taxes, is not to be considered an abatement which is to enure to the benefit of those named in the order, they not being parties to the drawing of the same ; but is a mere order to the treasurer to release the collector in his settlement with him from accounting for the several sums specified in such order.

THIS action was debt on a jail bond, dated April 4, 1836, given to the plaintiff as treasurer of the town of Belgrade, to procure the release of the principal defendant from commitment — he having been committed to prison for the non-payment of certain taxes assessed against him in the year 1834. One of the conditions of the bond was, that he should not depart without the exterior limits of the county until lawfully discharged. The writ was dated July 18, 1837. The general issue was pleaded, and a brief statement filed, alleging that the bond was given under duress ; that there was a breach of it the day it was given, and again in the May or June following ; that the bond was given to the wrong obligee ; that the tax, for the non-payment of which the arrest was made, had been abated before the suit was brought ; and the statute of limitations.

The case was submitted to the Court upon the following facts. It was agreed that Weston was arrested by Richard Mills, the collector of taxes for the town of Belgrade, and was liberated from arrest, in the gaol office, by giving the bond in suit ;

that the plaintiff was treasurer of Belgrade in 1834; that Samuel Austin was treasurer in 1835, and John S. Minot in 1836, and Samuel Page in 1837; that in May or June, 1836, said Weston went into the county of Somerset and remained there a week, and then returned to Belgrade.

The defendants introduced a book purporting to be a record of orders for Belgrade, which was objected to by the plaintiffs; but upon an affidavit of Weston, in whose possession the order had been, that the same was lost, the Court admitted said book. The order was described in said book as "an order to Richard Mills of sixty-two dollars sixty-seven cents, for the following abatements and demands"— among which was the following:

"C. Weston's tax,                     17,35
Cost of committing to jail,            2,52"

This order was dated July 17, 1837.

The plaintiffs then proved, but the evidence was objected to, that on July 17, 1837, Richard Mills, the collector of taxes, by whom said Weston had been committed, applied to the selectmen for an order to the amount of $62,67, to enable him to settle with the treasurer; that said Weston had before applied for an abatement of taxes to the amount of two dollars, and it had been refused; that he was a man of wealth; and that there was no intention on the part of the selectmen to abate said Weston's tax; but that the order was granted for the purpose of enabling the collector to settle his accounts. It was further proved, that some of the taxes referred to in the order were absolute abatements.

*Potter* and *Wells*, for the plaintiff.

1. The suit is rightly brought. The St. 1821, c. 59, § 26, does not apply. The statute only authorizes a suit in the name of the treasurer, but does not command it. It is only cumulative. *Newcastle* v. *Bellard*, 3 Greenl. 369. This suit is prosecuted for the benefit of the town, and is a bar to any further action. The bond in this case was not given to the treasurer. It was a misnomer — an error of the scrivener — to term the plaintiff treasurer; and the suit is correctly

brought in the name of the present plaintiff. *Anderson* v. *Langdon*, 1 Wheat. 85; *Sanford* v. *Sanford*, 2 Day, 559; *Sanders* v. *Filley*, 12 Pick. 554; *Skinner* v. *Somes*, 14 Mass. R. 107.

The bond is not in conformity with the law of 1835. It is not a statute bond. The conditions not being complied with, the plaintiff can claim only debt, cost, and interest. *Winthrop* v. *Dockendorff*, 3 Greenl. 156; *Kavanagh* v. *Saunders*, 8 Greenl. 422; *Huntress* v. *Wheeler*, 16 Maine R. 290. But the bond in this suit is good at common law. *Hall* v. *Cushing*, 9 Pick. 404; *Woolwich* v. *Forrest*, 1 Pen. 120; 2 Hall's Am. Law Journal, 80; *U. S.* v. *Sawyer*, 1 Gall. 87; *Saunders* v. *Rives*, 3 Stew. R. 109. Being a good bond at common law, the question of the statute of limitations does not arise. The condition that he shall not depart, &c. not being authorized by statute, is not a valid condition, to the breach of which the statute of limitations can apply. The condition that he will surrender himself, &c. is a valid condition, for the breach of which the defendant is liable. A bond may be good in part, and void for the residue. *Kavanagh* v. *Saunders*, 8 Greenl. 422; *Newcastle* v. *Bellard*, 3 Greenl. 371; *Triplet* v. *Gray*, 7 Yerg. 17; *Baker* v. *Haley*, 5 Greenl. 240; *Winthrop* v. *Dockendorf*, 3 Greenl. 156; *Burroughs* v. *Lowder & al.* 8 Mass. R. 373; *Vroom* v. *Smith*, 2 Green's Rep. N. J. 479; *U. S.* v. *Sawyer*, 1 Gall. 99; 1 Hill. & Met. Dig. 435.

The bond then being voluntarily given, the conditions being neither unlawful nor immoral, it is binding on the obligors. Co. Lit. 206; 1 Bac. Abr. Condition N.

There has been no abatement of Weston's tax. The amount specified in the order on Mills, was for the whole of Weston's tax. But the selectmen have no authority to abate the whole. St. 1821, c. 116, § 13. Parol evidence was properly admissible to show for what purpose this was given. *Nason* v. *Reed*, 7 Greenl. 24. The order is subject to the same explanation as a receipt would be. Mills was properly admitted to testify that it was not an abatement. If it was an abatement it could not operate as a good discharge — as a con-

tract under seal cannot be discharged by parol. *Farley* v. *Thompson*, 15 Mass. R. 18; *Sewall* v. *Sparrow*, 16 Mass. R. 24; *Bond* v. *Sampson*, 11 Mass. R. 42. It is competent to prove for what purpose this order was given. *Bangs* v. *Snow*, 1 Mass. R. 181.

*Vose & Lancaster*, for the defendants. 1. The action is barred by the Statute of Limitations. This is a bond under the law of 1822, c. 209, § 2, for the relief of poor debtors. Section 22 provides that any person committed shall be liberated on giving bond as is provided in sec. 4. Section 21 sets forth the conditions of such bond. This Statute is not repealed by St. of 1831, c. 520. Neither is this law repealed by the law of 1835, because sec. 17, of that act provides that this act shall not be so construed as to apply to, or affect any suit or suits commenced, or rights vested under sec. 14 of the same act which prescribes the form of the oath, and substitutes, instead of commencement of the action, the assessment of the tax.

Then a commitment grounded on an assessment made prior to the St. of 1835, does not fall within its provisions — but is expressly excepted from its operations. In this case the tax was assessed and the warrant issued in 1834. *Hastings* v. *Lane & al.* 15 Maine R. 137; *Gouch* v. *Stephenson*, 15 Maine R. 129; *Wheeler* v. *Huntress*, 16 Maine R. 296. One of the conditions of this bond, was, that Weston should not go beyond the limits of the county of Kennebec — the gaol limits being confined to those limits by St. of 1828. These gaol limits existed for all cases arising prior to the passage of the law of 1835, by which they were altered, although the commitment was after. *Farley* v. *Randall*, 22 Pick. 146.

The bond in this case bears date April 4, 1836 — in the May or June following, Weston went without the county limits. The writ is dated July 18, 1837, being more than a year after the breach. Statute 1822, c. 209, § 11, limits the time within which a suit can be commenced to one year.

Whether the inhabitants of Belgrade knew of the absence of the defendant, Weston, is immaterial — they were bound to take notice when their rights accrued. *Call* v. *Hagger & al.*

8 Mass. R. 425; *Bishop* v. *Little,* 3 Greenl. 408; *Brown* v. *Houdlette & al.* 1 Fairf. 399.

If this bond is not good by Statute, it is not good at common law — there being no contracting parties authorized to take such a bond as this. *Purple* v. *Purple,* 5 Pick. 226.

2. The tax has been abated. The selectmen could only abate it for the benefit of the defendants, c. 116, § 13. This case is not within the provisions of §·59, of the Statute before referred to. Parol evidence was inadmissible to alter this abatement. *Gray* v. *Wells,* 7 Pick. 217.

No action can be maintained in the name of the present plaintiff. c. 59, § 26.

The opinion of the Court was delivered by

SHEPLEY J. — It appears, that the plaintiff was treasurer of the town of Belgrade for the year 1834. That the defendant, Weston, was an inhabitant of that town, and was assessed that year the sum of seventeen dollars and thirty-five cents. That Richard Mills was collector, and by virtue of warrant committed Weston in the year 1836, for neglecting the payment of his tax. And the bond now in suit was voluntarily made and executed by him, and by the other defendant as his surety, to relieve himself from imprisonment. It was made payable to the plaintiff, as treasurer, or to his successor in office; although he had before that time ceased to be treasurer.

The defence rests upon several objections to the bond and to the right of the plaintiff to maintain a suit upon it. In considering them it becomes necessary to ascertain, what Westons' rights and duties were, if he would relieve himself from his imprisonment. It is provided in the act for the assessment and collection of taxes, c. 116 § 52, that "any person committed to gaol for his taxes shall have the liberty of gaol yard upon his procuring sufficient bonds as is by law directed for other debtors."

The act of 1822 for the relief of poor debtors, c. 209, § 22, provided that a person committed for taxes "shall give bond to the treasurer, from whom such warrant issued." But the

section appears to embrace only that class of cases, where the commitment is by virtue of a warrant from the treasurer, and not the class where the warrant issues from the assessors to the collector, as in this case. The twenty-third section of the same act provided, that "any person standing committed to prison by virtue of any warrant for the collection of any tax, rate, or assessment," might be discharged by the provisions of that and of the twenty-fourth section. The language is sufficiently broad to comprehend those cases where a bond had been given for the liberty of the gaol yard. The act of 1828 extended the limits of the gaol yards to the bounds of the counties. The act of 1831, c. 520, contained no provisions respecting persons committed for taxes. The act of 1835, c. 195, § 14, provided, that "any person committed to prison by virtue of any warrant for the collection of any tax, shall stand in the same relation to the assessors of the city, town, parish, or plantation, as the debtor shall to the creditor in this act, and the same proceedings may be had, and the person taxed and committed shall be subjected to the same liabilities and entitled to the same benefits and immunities as debtors are in regard to their creditors, as herein provided." Provision is made in the eighth section, that the debtor imprisoned "shall give bond in double the amount, for which he is so arrested and imprisoned, conditioned, that in six months" he will cite the creditor and submit himself to examination and take the oath, or pay the debt, costs, and fees, or be delivered into the custody of the gaoler. The section is silent as to whom the bond should be given, but if the legal inference be, that it should be payable to the creditor, the bond in cases of commitments for taxes should be given to the assessors; and they must become the prosecutors and collectors in such cases. This would seem to be the only legitimate construction, and it became certain by the supplementary act of 1836, which did not take effect until after the date of this bond. If, therefore, the act of 1835, included cases of commitment by virtue of warrants for the collection of taxes issued before its enactment, the bond in this case should have been given to the assessors, and the con-

dition should have been made in conformity to the provisions of the eighth section. But it is contended, that the case does not come within the provisions of that act, for the like reasons that required the Court to decide that the final proceedings on suits commenced before that time were not embraced by it. There was, however, an express provision in the seventeenth section, that the act "shall not be so construed as to affect any suit or suits already commenced;" while the language of the fourteenth section already quoted embraces all commitments for taxes, whether the warrants issued before or after the enactment, and there is no exception relating to them. The collection of taxes is a matter of public right and policy, and the same reasons did not exist for an exception as in the case of private rights. There is no reason for believing that such was the intention, and the language is too decisive to permit the construction, that the act was to be considered as prospective in this case as well as in the case of suits between party and party. The defendant, Weston, was entitled to give a bond to the assessors in conformity to the provisions of the eighth section. He was not obliged to give any bond. He did give one, not in conformity to those provisions, and was released from prison; and the question is, whether he is legally bound by it. It was not made to accomplish any illegal purpose, but for one permitted by law. It is no valid objection to it, that it was not made in conformity to the provisions of the statute, and is not therefore a good statute bond; for it may be good at common law. *Winthrop* v. *Dockendorff*, 3 Greenl. 156. All acts prescribing and defining gaol yards and limits were repealed by the seventeenth section of the act of 1835. And the provision in the condition of the bond, that he should not depart without the exterior bounds of the gaol yard, was inoperative. It could not be the occasion of a breach of it. Its insertion did not destroy the validity of the bond. *Kavanagh* v. *Saunders*, 8 Greenl. 422.

As it is apparent, that the bond was not given to the proper persons, it is insisted, that the plaintiff cannot sue upon it. There can be no doubt, that by the common law a bond may

be good and may be enforced by a suit, although the obligee have no beneficial interest in it. Cases are common, where it appears from the condition, that a third person is the only one beneficially interested. If the obligee accept the bond in such cases, he is regarded as assenting to the transaction and as submitting to execute the trust apparent on the paper, or to allow it to be executed by the use of his name upon proper terms. The commencement of a suit is *prima facie* evidence of his assent. In the case of *Baker* v. *Haley*, 5 Greenl. 240, the bond was given to the officer, who had no interest in it. The statute did not declare to whom it should be given, and it was decided to be a good statute bond. In the case of *Anderson* v. *Langdon*, 1 Wheat. 85, the bond was given to the directors of a private association, who brought the suit after they ceased to be directors, and it was sustained. The provision of the statute, that the bond should be given to the assessors, would prevent its being considered a good statute bond, or a protection to the gaol keeper; but it would not prevent a person thus lawfully imprisoned from making a bond or contract with his creditor, which might be good at common law. And a bond thus given, is to be judged by its rules; and it need not be given to the persons designated by the statute, but may conform to the agreement of the parties. The decision in the case of *Purple* v. *Purple*, 5 Pick. 226, is not considered as opposed to these positions. The statute in that case required the bond to be given to the party from whom the goods were to be replevied, as a condition precedent; and the officer was regarded as a trespasser, "and the purpose and effect of it [the bond] were to aid and abet him in a trespass upon the attaching officer."

The plaintiff would not be precluded from maintaining the suit by reason of that clause in the bond, making it payable to him or his successor in office; for it does not come within the class of contracts which are authorized by the statute, c. 59, § 26, to be prosecuted by town treasurers or their successors in office. His rights, as obligee, are not destroyed by the insertion of those words.

The bond was forfeited only by a neglect to surrender himself within six months, and the action was commenced within the year after the forfeiture.

It is insisted, that the obligation was discharged by an abatement of the tax and costs. Disregarding all parol evidence of the intention of the assessors, as inadmissible, there is no satisfactory proof that the tax has been abated to the defendant, Weston. The order was not drawn in his favor, but in favor of the collector. The object was to release the collector from his liability to account to the treasurer for certain taxes, and to give him a credit for certain other demands, which he appears to have had against the town. The term abatement, found in such an instrument between him and them, does not prove more than an incorrect use of the word. It would be singularly used, if it were intended by it to discharge Weston from the costs of commitment. The word taxes, instead of abatements, might have more clearly expressed their intention, that the order should authorize the treasurer to allow him those taxes and demands in a settlement, leaving the taxes to be adjusted with the persons taxed, as should be thought proper. The defendant, Weston, does not appear to have had any interest in, or connection with that transaction. To this construction it is objected, that the town only could have discharged the collector from the payment of Weston's taxes, because he was not committed within a year. The section of the act relied upon, c. 116, § 54, applies to cases, where the person committed was discharged from imprisonment by taking the poor debtor's oath, and not to cases like the present. The risk of the inability of the person taxed to pay, was thought to rest properly upon the collector if he did not collect or commit within a year unless the town itself should vote to discharge him.

*Judgment for the plaintiff.*